# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**UNITED STATES OF AMERICA**
    **Plaintiff,**

  v.                                        **Case No. 07-CR-1**

**LENARD GEORGE ALBERT**
    **Defendant.**

## DECISION AND ORDER

The government charged defendant Lenard Albert with unlawful re-entry after deportation, contrary to 8 U.S.C. §§ 1326(a) & (b)(2). According to the superseding indictment, defendant, an alien, was deported to Dominica on or about January 7, 1998, found in the United States on or about December 20, 2006, and had not obtained permission for re-entry. Defendant moves to dismiss, arguing that the 1998 deportation was fundamentally unfair because he was not present for, and received no notice of, the immigration hearing during which he was ordered deported in absentia.

## I. FACTS AND BACKGROUND[1]

### A. Original Deportation Proceedings

Defendant originally entered the United States (apparently lawfully) on or about February 19, 1982. On June 3, 1994, the immigration service ("service") issued an order to show cause

---

[1]Although the court generally does not consider facts outside the indictment in deciding a motion to dismiss, the parties have agreed to certain undisputed facts pertaining to defendant's immigration history and deportation, and neither side has requested a hearing. Therefore, I will decide the motion based on the parties' written submissions. To the extent that any facts are disputed, I will not rely upon them.

why defendant should not be removed based on his failure to maintain or comply with the conditions of his non-immigrant status, specifically, his failure to attend a school approved for foreign students. (Def.'s Mot. to Dismiss Ex. A.) A warrant for defendant's arrest was issued the same day and executed on or about January 31, 1995. (Id. Ex. B.) The order to show cause was personally served on defendant upon his arrest, but he refused to sign an acknowledgment. (Id. Ex. C.) Defendant was ordered detained (Id. Ex. D), and a deportation hearing held on February 6, 1995, at which defendant appeared pro se (Id. Ex. E).

At the hearing, defendant acknowledged receiving a copy of the order to show cause. (Id. Ex. E at 1.) The immigration judge ("IJ") indicated that, according to the order, defendant was a citizen of Britain and entered the United States in 1987 as a student. The IJ further explained the basis for the charges – that defendant was no longer attending school and thus was subject to deportation – and defendant stated that he understood. (Id. Ex. E at 2.) The IJ also explained that defendant had the right to representation, but defendant indicated that he wanted to be deported and did not want a lawyer. (Id. Ex. D at 2-3.) Finally, the IJ explained defendant's rights in the proceeding, including the right to present witnesses and evidence, question or challenge any evidence submitted by the government, appeal to the Board of Immigration Appeals ("BIA"), and advise the IJ of what country he wished to be returned to in the event of deportation. (Id. Ex. E at 3-4.) Defendant responded that he understood and that he wanted to be returned to England. (Id. Ex. E at 4.)

The IJ then placed defendant under oath, and defendant indicated he was a native of England and a citizen of Britain, and "admitted" that he was no longer attending school and thus subject to deportation. (Id. Ex. E at 4-5.) On questioning by the service's lawyer, defendant admitted convictions for larceny, violation of a restraining order, and breaking and

2

entering. (Id. Ex. E at 6-8.) The IJ then ordered that defendant be deported to England and advised defendant of his right to appeal to the BIA. (Id. Ex. E at 9.) Defendant asked some questions about the appeal procedure, which the IJ attempted to answer. (Id. Ex. E at 9-10.) The IJ further indicated that he believed defendant had "zero chance" of staying in the country, and that his convictions rendered him ineligible for suspension of deportation or voluntary departure. (Id. Ex. E at 10-11.) After some back and forth, defendant waived his right to appeal. (Id. Ex. E at 12.)

Defendant was subsequently sent two written notices advising him of his right to appeal. The first was sent to an address on Commercial Street in Boston (Id. Ex. F)[2] and the second to an address on West First Street in New York City (Id. Ex. G). Defendant filed a pro se appeal, which the BIA dismissed for lack of jurisdiction based on defendant's waiver of an appeal at the hearing. (Id. Ex. H.)

**B.    Second Deportation Proceeding**

On February 25, 1997, the service moved to re-open defendant's case and file additional charges of deportability.[3] The service indicated that defendant misled it as to his nationality and citizenship, his date of birth, and the date, place and manner of his entry into the United States. The service's lawyer indicated that he served defendant with the motion by certified mail at an address on Kingston Street in Boston. (Id. Ex. I.) In the new charging document, the service withdrew the charge of failure to maintain non-immigrant status, and alleged that defendant was a citizen of Dominica, admitted to the United States as an immigrant at or near

---

[2]This appears to be the detention facility where defendant was housed after his arrest.

[3]It is unclear where defendant was between February 1995 and May 1997.

3

St. Thomas, U.S. Virgin Islands on or about February 19, 1882, and was convicted of assault and battery in a Massachusetts state court in May 1993 and sentenced to two years in prison. (Id. Ex. J at 1.) The service sent these additional charges to defendant by certified mail directed to the Kingston Street address. (Id. Ex. J at 2; Ex. K.) The certified mail return receipt was signed by someone, but the signature is illegible. (Id. Ex. K.)

On May 5, 1997, the IJ granted the service's motion to re-open, finding that the charges in the original order to show cause were incorrect and that defendant had given false testimony under oath in conceding deportability as originally charged. The IJ further indicated that had defendant been truthful about his immigration history, he would not have been deportable based on those charges. (Id. Ex. L at 3.) However, the IJ found no fundamental unfairness in allowing the service to re-open because defendant was well aware of the true facts and did nothing. (Id. Ex. L. at 4.)

On May 23, 1997, the immigration court sent defendant (at the same Kingston Street address) a copy of the re-opening decision and a notice setting another hearing for September 10, 1997. (Id. Ex. M; Govt.'s Resp. Ex. 1.) Defendant failed to appear at the September 10 hearing, but the IJ found that defendant had been notified via certified mail at the last address provided to the service. The IJ ruled that the service had met its burden on the additional charges and ordered that defendant be deported to Dominica. (Govt.'s Resp. Ex. 2.) In an affidavit, defendant avers that he never received notice of the September 10 hearing, and that he never resided at Kingston Street in Boston in 1997 or told any immigration official that he did. (Aff. of Lenard George Albert [R. 21-4] at 2.)

On September 11, 1997, immigration court staff mailed defendant a copy of the deportation order, which indicated that he had until October 10, 1997 to appeal. A warrant of

4

removal was issued on September 25, 1997, and a warning to alien and notice for defendant's flight to Dominica issued on October 1, 1997. Defendant failed to appear for the flight. (Govt.'s Resp. at 3.)

On November 20, 1997, immigration authorities encountered defendant at the Cincinnati - Northern Kentucky International Airport, arriving from Frankfurt, Germany. Defendant had apparently flown to Germany from JFK International Airport in New York earlier on November 20, but German officials refused him admission based on his presentation of a fraudulent U.S. passport. U.S. immigration authorities detained defendant and transported him to a county jail in Kentucky. After ascertaining his identity through fingerprints, immigration authorities interviewed defendant on November 21, 1997, and he admitted prior criminal convictions for assault and battery and violation of a restraining order in Massachusetts. (Def.'s Mot. Ex. N; Govt.'s Resp. Ex. 5.) On November 22, 1997, an immigration inspector personally served defendant with a notice alleging deportability based on his Dominican citizenship and convictions of assault and other offenses in Massachusetts in March and May 1993,[4] but defendant refused to sign the notice. (Govt.'s Resp. Ex. 4.) Defendant was subsequently removed on January 7, 1998. (Govt.'s Resp. at 3-4.) As noted above, the instant indictment alleges that immigration authorities found defendant in Milwaukee on December 20, 2006.

## II. DISCUSSION

The elements of a § 1326 offense are (1) the defendant is not a citizen of the United States; (2) the defendant was lawfully deported from the United States; (3) the defendant was subsequently found in the United States; and (4) the defendant did not have lawful permission

---

[4]These are the same violations forming the basis for the IJ's September 1997 order of deportation.

5

to return to the United States. In <u>United States v. Mendoza-Lopez</u>, 481 U.S. 828, 837 (1987), the Supreme Court held that "in order to rely on a prior deportation as an element of the crime of unlawful re-entry, the proceedings leading up to a deportation must comport with principles of due process." <u>United States v. Roque-Espinoza</u>, 338 F.3d 724, 727 (7th Cir. 2003). The Seventh Circuit has "held that to attack a deportation or removal collaterally in a § 1326 case, the defendant must first show that the underlying order was the result of a 'deportation hearing [that] effectively foreclosed his right to direct judicial review of the deportation order,' and then establish that 'the deportation hearing was fundamentally unfair.'" <u>Id.</u> at 728 (quoting <u>United States v. Espinoza-Farlo</u>, 34 F.3d 469, 471 (7th Cir.1994)).

> Section 1326(d) further provides that:
>
> an alien may not challenge the validity of the deportation order described in subsection (a)(1) or subsection (b) unless the alien demonstrates that–
>
> (1) the alien exhausted any administrative remedies that may have been available to seek relief against the order;
>
> (2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and
>
> (3) the entry of the order was fundamentally unfair.

8 U.S.C. § 1326(d). These statutory elements are stated in the conjunctive, but the circuits have split on whether the defendant must prove all three, with the Seventh Circuit declining to choose a side. See <u>Roque-Espinoza</u>, 338 F.3d at 728; but see <u>United States v. Santiago-Ochoa</u>, 447 F.3d 1015, 1019-20 (7th Cir. 2006) (discussing the elements conjunctively). Defendant asks me to side with the Ninth Circuit, which appears to state the test disjunctively. See <u>United States v. Muro-Inclan</u>, 249 F.3d 1180, 1183 (9th Cir. 2001). However, even the Ninth Circuit requires that the defendant show (1) that his due process

6

rights were violated by defects in his underlying deportation proceeding, and (2) that he "suffered prejudice as a result of the defects." Id. In order to show prejudice, the defendant must show that he had a "plausible ground for relief from deportation." Id. at 1185 (internal quote marks omitted). The Seventh Circuit has similarly held "that in addition to showing a violation of due process, see Roque-Espinoza, 338 F.3d at 729, [the defendant] must show that he was prejudiced by the removal proceedings." Santiago-Ochoa, 447 F.3d at 1019.

Defendant's motion fails because, even if he did not receive proper notice of the September 10, 1997 hearing, he cannot show prejudice. It is undisputed that, at the time of his 1998 deportation, defendant qualified as an aggravated felon based on his prior convictions, "which means he is conclusively presumed to be subject to removal and is ineligible for cancellation of removal, voluntary departure, and registration as a permanent resident alien." Id. at 1020.[5]

Further, defendant has failed to show that he exhausted available administrative remedies. Again, even assuming that he did not receive proper notice of the September 10, 1997 hearing, he was on November 22, 1997 personally served with a notice of the charges upon which his removal was based, along with a list of organizations and lawyers providing free legal services, yet he made no effort to re-open the proceedings based on lack of notice. See 8 U.S.C. § 1229a(b)(5)(C) (stating that a removal order may be rescinded "upon a motion to reopen filed at any time if the alien demonstrates that the alien did not receive notice . . . and the failure to appear was through no fault of the alien"); see also Adeyemo v. Ashcroft, 383

---

[5]Defendant concedes a prior conviction for assault and battery, for which he received a two year prison sentence. This conviction qualifies as an aggravated felony under 8 U.S.C. § 1101(43)(F).

7

F.3d 558, 560 (7th Cir. 2004) (discussing motion to re-open by alien deported in absentia, who claimed lack of notice). Defendant also made no effort to challenge the removal by filing a petition for a writ of habeas corpus under 28 U.S.C. § 2241. See Roque-Espinoza, 338 F.3d at 729. As the court noted in Roque-Espinoza, the "fact that he chose not to make the attempt does not mean that he was deprived of all avenues of judicial review of his removal order." 338 F.3d at 729.

Finally, given the circumstances of this case, where defendant misled the IJ during his initial hearing, it is difficult to conclude that the later proceedings were fundamentally unfair. If defendant had told the IJ the truth during the 1995 hearing, the subsequent proceedings would not have been necessary.

### III. CONCLUSION

**THEREFORE, IT IS ORDERED** that defendant's motion to dismiss (R. 21) is **DENIED**.

Dated at Milwaukee, Wisconsin, this 2nd day of July, 2007.

/s Lynn Adelman
_____
LYNN ADELMAN
District Judge

8